IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 9, 2019

## STATE OF TENNESSEE v. GERARDO JUAREZ aka GERARDO JUAREZ-ORTEGA

**Appeal from the Criminal Court for Shelby County**
No. 15-06152      Chris Craft, Judge

_____

### No. W2018-01054-CCA-R3-CD

_____

A Shelby County jury convicted the defendant, Gerardo Juarez, of two counts of reckless endangerment, one count of attempted voluntary manslaughter, three counts of aggravated assault, and one count of employing a firearm during the commission of a dangerous felony. Following a sentencing hearing, the trial court imposed an effective sentence of eleven years in confinement. On appeal, the defendant challenges the sufficiency of the evidence to support his aggravated assault and attempted voluntary manslaughter convictions. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court. However, we remand the case for corrected judgment forms in Counts one, four, and five.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgments**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Stephen C. Bush, Shelby County Public Defender; Harry E. Sayle III, Assistant Public Defender (on appeal); and Trent Hall and John Scott, Assistant Public Defenders (at trial), for the appellant, Gerardo Juarez.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Facts and Procedural History

Following a shooting at Club Las Vegas in Memphis, Tennessee, a Shelby County grand jury indicted the defendant, Gerardo Juarez, for three counts of attempted first degree murder (Counts one, three, and five), three counts of aggravated assault (Counts two, four, and six), and three counts of employing a firearm during the commission of a dangerous felony (Counts seven, eight, and nine).  Following a jury trial, the defendant was convicted of the lesser-included offenses of reckless endangerment (Counts one and five), attempted voluntary manslaughter (Count three), the charged offenses of aggravated assault (Counts two, four, and six), and employing a firearm during the commission of a dangerous felony (Count eight).  The defendant was acquitted on Counts seven and nine.  At trial, the State presented the following facts for the jury's review.

On August 24, 2015, Thomas Avant and Jeremy Fields were working as bouncers at Club Las Vegas.  Mr. Avant, legally armed with a Glock .40 caliber pistol, was responsible for frisking patrons as they entered the club, while Mr. Fields checked each person's ID and occasionally assisted in frisking for weapons.  At approximately 3:00 a.m., Mr. Avant approached the defendant, who was drinking a beer at the bar.  Because the club was closing, Mr. Avant repeatedly asked the defendant to leave and offered to pour the defendant's beer into a plastic cup, allowing him to finish it as he walked to the front door.  Although the defendant had been drinking, Mr. Avant did not believe he was "falling down drunk."  Eventually, Mr. Avant had to physically remove the defendant when he threw his beer at Mr. Avant's feet.  The defendant was "irate, yelling, [and] cursing" as he was taken outside.  In Spanish, the defendant threatened he would return and, in English, that he would "f***ing kill you n*****s."

After the defendant was taken outside, he went to his vehicle and left the parking lot.  Mr. Avant and Mr. Fields went to a nearby McDonald's to eat breakfast, but returned to the club when the owner, who was carrying the cash from the night, asked Mr. Avant to follow him home.  They parked across the street from Club Las Vegas and, as they were walking toward the building, noticed the defendant's vehicle was parked in the center lane of the street in front of the club.  As Mr. Avant and Mr. Fields walked toward the entrance, the defendant began shooting at them, firing approximately "ten to fifteen shots."  The owner and several employees had begun to exit the building, and Mr. Avant yelled for them to get back inside.

The defendant then made a U-turn, turned off his headlights, and shot "about ten more" times as he passed the club a second time.  Finally, the defendant made a third pass, pulled into the lane closest to the club, and shot approximately fifteen times. At this point, Mr. Avant pulled out his gun and fired at the defendant three times.  However, because he was "ducking and dodging" the defendant's bullets, he only managed to hit

the defendant's windshield. Mr. Fields "initially ducked behind the bar" but later "tr[ied] to usher everyone back inside" to safety.

Meliza Contreras, an employee of the taco truck that was parked in front of the club, was outside during the shootings. Although she was able to hide during the first two shootings, during the third shooting, she "didn't have a chance to run" and was shot in her right thigh. Ms. Contreras was treated at the hospital and released the same day. However, physicians were unable to remove the bullet from her leg. Sergeant Kevin Covington with the Memphis Police Department ("MPD") Felony Response Bureau met Ms. Contreras at the hospital and photographed her injuries.

Following the defendant's final shots, Mr. Avant and Mr. Fields followed the defendant while they called 911. Officer Patrick Taylor responded to the shooting call at Club Las Vegas. He received information of the defendant's whereabouts, located the defendant's vehicle, and initiated a traffic stop. However, the defendant refused to stop and continued driving through a residential area, driving onto a curb, and finally coming to a stop several blocks later. The defendant, who appeared "jovial," was taken into custody without incident. Officer Taylor noticed several spent shell casings in plain view in the defendant's backseat and a live round in the driver's seat. Police also located a gun at the corner where the defendant went onto the curb, although Office Taylor did not see the defendant throw a gun from his vehicle. Once the defendant was detained, Mr. Avant and Mr. Fields arrived at the scene and identified the defendant as the shooter.

Sergeant Tim Monistere with the MPD Crime Scene Unit arrived at Club Las Vegas at 3:40 a.m. and processed the scene, photographing and collecting all evidence. He also responded to three additional scenes in this case, including the defendant's car, the location where the gun was recovered, and the police station where Mr. Avant had relinquished his gun. William Merritt, a criminal investigator with the Shelby County District Attorney General's Office, transported the guns and shell casings to and from the TBI Crime Laboratory for testing.

Special Agent Cervinia Braswell, a forensic scientist with the Firearms Identification Unit of the TBI, analyzed the firearms and shell casings recovered in this case. She determined both firearms were functioning properly and compared test fired cartridge cases to the casings found in the defendant's car and at Club Las Vegas. Special Agent Braswell determined the .40 caliber cartridge case recovered from Club Las Vegas was fired from Mr. Avant's Glock .40 caliber pistol. However, although the .9 millimeter casings found at the scene shared "the same class characteristics" and "some similar individual characteristics" with the Ruger pistol recovered near the defendant, Special Agent Braswell was unable to definitively determine whether the casings were fired from that particular gun.

The defendant declined to present evidence. Following deliberations, the jury found the defendant guilty of reckless endangerment and aggravated assault with regards to his actions against Meliza Contreras (Counts one and two), attempted voluntary manslaughter, aggravated assault, and employing a firearm during the commission of a dangerous felony with regards to his actions against Thomas Avant (Counts three, four, and eight), and reckless endangerment and aggravated assault with regards to his actions against Jeremy Fields (Counts five and six). The defendant was found not guilty of the remaining employing a firearm during the commission of a dangerous felony charges (Counts seven and nine). Following a sentencing hearing, the trial court merged Count one into Count two, Count four into Count three, and Count five into Count six and imposed an effective sentence of eleven years.

The defendant filed a timely motion for new trial in which he argued, in part, the evidence at trial was insufficient to support the jury's verdict. The trial court denied the motion, and this timely appeal followed.

## *Analysis*

The defendant's sole issue on appeal is the sufficiency of the evidence to support his aggravated assault (Counts four and six) and attempted voluntary manslaughter (Count three) convictions.[1] The State contends the evidence is sufficient. We agree.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

---

[1] The defendant does not challenge his convictions for reckless endangerment (Counts one and five), the aggravated assault of Ms. Contreras (Count two), and employing a firearm during the commission of a dangerous felony (Count eight).

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## A.    Aggravated Assault

The jury convicted the defendant of two counts of aggravated assault, a Class C felony. As charged in this case, aggravated assault occurs when a person intentionally or knowingly causes another to reasonably fear imminent bodily injury by using or displaying a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2), -102(a)(1)(A)(iii). The defendant specifically contends the evidence presented was insufficient to establish beyond a reasonable doubt that Mr. Avant and Mr. Fields "reasonably fear[ed] imminent bodily injury." He bases his argument upon the fact that neither witness testified he was in fear during the shooting, Mr. Avant shot back at the defendant, and Mr. Avant and Mr. Fields followed the defendant until police apprehended him.

Although neither Mr. Avant nor Mr. Fields directly testified he was in fear during the shooting, the jury was entitled to infer the victims' fear of imminent bodily injury. *See State v. Alvin Brewer and Patrick Boyland*, No. W2012-02282-CCA-R3-CD, 2014 WL 1669807, at *23 (Tenn. Crim. App. Apr. 24, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014) (holding the evidence was sufficient even though the victim did not testify he was fearful); *State v. Ricky Atkins*, No. 03CO1-9812-CC-00432, 1999 WL 1019029, at *3 (Tenn. Crim. App. Nov. 10, 1999), *perm. app. denied* (Tenn. Apr. 10, 2000) (holding the jury was entitled to infer fearfulness when the victim ran away from the defendant and called the police); *State v. Gregory Whitfield*, No. 02CO1-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App. May 8, 1998), *perm. app. denied* (Tenn. Dec. 7, 1998) ("The element of 'fear' is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury."); *State v. Tommy Arwood, Jr.*, No. 01CO1-9505-CC-00159, 1996 WL 274996, at *3 (Tenn. Crim. App. May 24, 1996), *no perm. app. filed* (holding

the evidence was sufficient to find the victim was fearful of imminent bodily injury when he attempted to defend himself and called police after the defendant left).

Here, the defendant began shooting at Mr. Avant and Mr. Fields as they walked toward Club Las Vegas. The men were forced to hide behind vehicles as the defendant drove by the building three times and fired approximately 35 shots. Mr. Avant testified he was "ducking and dodging bullets" as he attempted to shoot back at the defendant. Mr. Fields tried to get other employees to safety as the defendant continued shooting at him. After the shooting ended, Mr. Avant and Mr. Fields called 911 and followed the defendant until police arrived. Under those circumstances, the jury could have inferred the victims were in fear of imminent bodily harm. The defendant is not entitled to relief.

## B.    Attempted Voluntary Manslaughter

The jury convicted the defendant of one count of attempted voluntary manslaughter, a Class D felony. "Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). "[T]he jury is responsible for reviewing the evidence to determine whether it supports a finding of adequate provocation." *See State v. Lajaun Harbison*, No. E2015-00700-CCA-R3-CD, 2016 WL 4414723, at *21 (Tenn. Crim. App. Aug. 18, 2016), *rev'd on other grounds*, 539 S.W.3d 149 (Tenn. 2018) (citing *State v. Williams*, 38 S.W.3d 532, 539 (Tenn. 2001)). One is guilty of attempted voluntary manslaughter when he acts "with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2). "If an offense is defined in terms of causing a certain result, an individual commits an attempt at the point when the individual had done everything believed necessary to accomplish the intended criminal result." Tenn. Code Ann. § 39-12-101, Sent. Comm'n Cmts.

The defendant specifically contends the State failed to prove he acted in a "state of passion produced by adequate provocation" from Mr. Avant. The defendant asserts he was angry, but not drunk, when he left Club Las Vegas and did not know Mr. Avant would return to the club that night. He also emphasizes his demeanor when arrested, which Officer Taylor described as "jovial."

Viewed in the light most favorable to the State, Mr. Avant testified he asked the defendant to leave Club Las Vegas at closing time. Because the defendant wanted to finish his beer, Mr. Avant offered to pour the beer into a plastic cup that could be taken to the door. The defendant became angry, pouring the beer onto Mr. Avant's feet and threatening Mr. Avant in both Spanish and English. Eventually, Mr. Avant had to

physically remove the defendant from the club. When Mr. Avant returned to the club, he noticed the defendant's vehicle parked in the middle of the street. As Mr. Avant walked toward the club, the defendant began shooting at him, driving by a total of three times and firing approximately thirty-five shots. Mr. Avant hid behind vehicles and dodged bullets to avoid being struck. In reaching its verdict, it is clear the jury found the defendant's prior altercation with Mr. Avant served as adequate provocation, and we will not second guess the jury's decision. *See Lajaun Harbison*, 2016 WL 4414723, at *21. Accordingly, the evidence is sufficient to support the defendant's conviction for attempted voluntary manslaughter. The defendant is not entitled to relief.

Finally, we must note one problem with the judgments in this case. The trial court merged Count one into Count two, Count four into Count three, and Count five into Count six. Specifically, the trial court stated "So counts one and four and five are merged. He will not be sentenced on those." It is well-established that the trial court should have entered a separate sentence and judgment form for each count of the indictment. *See State v. Berry*, 503 S.W.3d 360, 364-65 (Tenn. 2015). Therefore, we remand this case to the trial court for entry of sentences and corrected judgment forms for Counts one, four, and five. On remand, the trial court should impose separate sentences for each count and the "Special Conditions" box for all counts should note the merged counts. *Id.*

## *Conclusion*

For the aforementioned reasons, the judgments of the trial court are affirmed. However, we remand this case for entry of corrected judgments as specified in this opinion.

_____
J. ROSS DYER, JUDGE